UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:_____

RURAL INTERNATIONAL BANK LIMITED (In Liquidation),
a corporation organized under the laws of the Commonwealth of The Bahamas

    Plaintiff,

vs.

CARLTON FIELDS JORDEN BURT, P.A.,
and ROBERT B. MACAULAY, an individual;

    Defendants.
_____/

## COMPLAINT

The Plaintiff, Rural International Bank Limited (In Liquidation) ("RIBL"), sues the Defendants, Carlton Fields Jorden Burt, P.A. and one of its partners, Robert B. Macaulay (collectively, "Carlton Fields") and alleges as follows:

1. This is an action for damages in excess of $75,000 exclusive of attorneys' fees, interest and costs.

**Parties and Jurisdiction**

2. Plaintiff, RIBL, is a corporation organized under the laws of the Commonwealth of The Bahamas. At all relevant times its principal place of business was in Nassau, Bahamas.

3. RIBL is currently in liquidation under the laws of The Bahamas. The Supreme Court of The Bahamas has appointed Maria M. Ferere and Alison J. Treco as Co-Liquidators for the purpose of winding up the company. The Co-Liquidators have authorized and directed the filing of this action.

4. Defendant Carlton Fields Jorden Burt, P.A. is a professional association organized under the laws of Florida and is engaged in the practice of law. At times relevant to this action Carlton Fields Jorden Burt, P.A. maintained an office in Miami-Dade County, Florida.

5. Defendant Robert B. Macaulay is an attorney licensed to practice law in Florida. Macaulay is a partner in Carlton Fields Jorden Burt, P.A. resident in its Miami, Miami-Dade County office.

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because the action is between citizens of different states, and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

7. Venue is proper under 28 U.S.C. § 1391(b)(2) or (3) because a substantial part of the events giving rise to the claim occurred in this district or because one or more of the Defendants are subject to the Court's personal jurisdiction.

**Common Allegations of Fact**

8. Beginning in January 2009, Carlton Fields began representing RIBL in the United States. Accordingly, in a letter dated January 29, 2009 and signed by Macaulay, Carlton Fields agreed to represent RIBL with a defined scope of engagement of: "provide general advice regarding U.S. legal matters." This letter agreement was signed by the representative of RIBL accepting and agreeing to its terms on February 10, 2009 ("U.S. Engagement Agreement"). A true and correct copy of the U.S. Engagement Agreement is attached hereto as Exhibit A.

9. Among other things, in the U.S. Engagement letter Carlton Fields promised to provide monthly invoices with each invoice to include a "reasonably detailed description of the services and costs covered by the invoice."

10. In a letter to RIBL purportedly dated November 16, 2010 ("Bankruptcy

Engagement Letter"), Carlton Fields sought to add to the scope the scope of its engagement on behalf of RIBL:

> In addition to the matters in which we have represented you under our previous engagement letter, we will represent you by assisting your Cayman and Brazilian Counsel in connection with pending litigation with the Petroforte Bankruptcy Trustee in the Cayman Islands and Brazil, as well as challenging the Trustee's subpoenas pursuant to letters rogatory in the U.S. District Court for the Southern District of Florida

11. RIBL does not have a signed copy of the Bankruptcy Engagement Letter, and Carlton Fields has not been able to provide one. Upon information and belief, the Bankruptcy Engagement Letter was never signed.

12. There are no other agreements between RIBL and Carlton Fields. In particular, there is no agreement between RIBL and Carlton Fields concerning multiple representation under which Carlton Fields, as to a given matter, was to provide joint representation to RIBL and other clients.

13. At no time has Carlton Fields ever advised RIBL that its undertaking to "provide general advice regarding U.S. legal matters" has been concluded or terminated.

14. With the exception of one or two brief invoices showing some detail, Carlton Fields never provided RIBL with monthly invoices containing a reasonably detailed description of the services and costs covered by the invoice.

15. Between August 2009 and April 2013, Carlton Fields invoiced RIBL a total of one million ten thousand U.S. dollars ($1,010,000) for "retainers." These eight (8) invoices contained no detailed information as to the services for which the retainers were billed. For example, the April 15, 2013 invoice, in the amount of two hundred thirty-three thousand dollars

($233,000), contained the description, "For Carlton Fields and co-counsel retainers in connection with US [sic] legal matters." These invoices were all addressed exclusively to RIBL at its address in The Bahamas.  RIBL paid all of the invoices for "retainers", transferring one million ten thousand U.S. dollars ($1,010,000) to Carlton Fields.

16.    Carlton Fields never provided any invoices to RIBL, let alone invoices showing "detailed description[s]," to show how RIBL's $1,010,000 was spent.  When asked in December 2015 by attorneys for RIBL for copies of billing records to show how the retainers were used, Carlton Fields refused, stating that their services had all been at the direction of and for the benefit of RIBL's parent company, Banco Rural, a Brazilian company, and only for the "indirect benefit" of RIBL.  Carlton Fields ultimately provided copies of billing records to RIBL's attorneys only after being directed to do so by the Brazilian Bankruptcy Trustee for Banco Rural.

17.    Based upon a review of the Carlton Fields billing records and court records, it appears that at most only a small portion of the work performed for RIBL's payments of $1,010,000 was actually for RIBL.

18.    In 2012 and 2013, RIBL made a series of three loans totaling approximately $13,000,000 to a Florida limited liability company, Key Financial Investment Group, LLC ("Key Financial").  On the date that two of the loans, totaling approximately $8.8 million were made and funded, the 100% ownership interest in Key Financial was sold to a Delaware corporation, Geofinance Limited ("Geofinance").  Geofinance expressly assumed the obligations of Key Financial, and shortly thereafter, without paying its loans from RIBL, Key Financial was dissolved based on its "not being used."  The Articles of Dissolution stated that:  "[a]ll debts, obligations and liabilities of the limited liability company have been paid or discharged."  The sole shareholder of Geofinance and the last manager of Key Financial were the same individual.

19. In or about April 2014, without advising RIBL and without terminating its engagement as U.S. counsel for RIBL, Carlton Fields accepted an engagement to render an opinion to Geofinance concerning the validity of the "assignment" of the RIBL debt from Key Financial to Geofinance. In a letter dated April 17, 2014, Macaulay provided an opinion to the Bahamian counsel for Geofinance that the Articles of Dissolution of Key Financial, and, specifically, the statement that all debts "have been paid or discharged", was "substantially accurate" because Geofinance assumed the debt. Macaulay further offered his opinion that "[n]o harm has been done to RIB[L]".

20. On May 8, 2014, the Bahamian counsel for Geofinance, Marcus Turnquest, sent a letter to RIBL's Bahamian counsel stating that Geofinance had "taken advice from United States counsel [Carlton Fields]" … "and has been advised it faces no United States liability on this issue." A copy of the April 17, 2014 Macaulay letter was enclosed. Since that time, Geofinance has refused to repay the Key Financial loans, now totaling approximately $15 million with interest.

21. As recently as December 2015, Macaulay wrote to attorneys for RIBL stating in part that the RIBL Co-Liquidators should stop "wasting time and creditors' money chasing nonexistent claims." Macaulay open-copied an attorney for a creditor, the U.S. attorney for Geofinance, who promptly used the letter to defend his client.

22. RIBL has incurred substantial expenses and attorneys' fees in attempting to collect the Key Financial debt from Geofinance, without success.

23. At all times Carlton Fields owed RIBL a duty of care and a duty of loyalty.

24. Carlton Fields breached its duties owed to RIBL by, among other things:

    (a) Charging RIBL for work performed for the benefit of others;

(b) Failing to communicate to RIBL the status of its engagement;

(c) Failing to advise RIBL that it was taking directions for the RIBL enagement by others;

(d) Failing to advise RIBL that RIBL was only an "indirect beneficiary" of the services provided by Carlton Fields;

(e) Accepting an engagement for an adverse party – Geofinance – without advising RIBL or terminating its engagement by RIBL; and

(f) Providing advice to an adverse party – Geofinance – that was detrimental to the interests of RIBL.

WHEREFORE, RIBL demands a trial by jury and judgment against Carlton Fields as follows:

1. For a disgorgement of fees totaling $1,010,000 or such amount as was used for the benefit of other clients of Carlton Fields;

2. For damages proximately caused by Carlton Fields' breaches of its duties of care and loyalty;

3. For interest and costs;

4. For such other relief as the Court may deem appropriate.

DATED: May 6, 2016.

Respectfully submitted,

By: /s/ Warren R. Trazenfeld
Warren R. Trazenfeld, Esq.
Florida Bar Number: 317071
E-Mail: wrt@trazlaw.com
WARREN R. TRAZENFELD, P.A.
2665 South Bayshore Drive, Suite 700
Miami, Florida 33133
Telephone: (305) 860-1100
Facsimile: (305) 858-6123
Attorneys *for Plaintiff, Rural International Bank Limited (In Liquidation)*